Filed 12/26/14  Ryan v. Lustre-Cal CA2/8

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| KATHLEEN RYAN et al., | B248845 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC473294) |
| v. | |
| LUSTRE-CAL et al., | |
| Defendants and Respondents. | |

APPEAL from the judgments of the Superior Court of Los Angeles County, Mary Ann Murphy, Judge.  Affirmed.

Law Offices of Martin L. Stanley, Martin L. Stanley and Jeffrey R. Lamb for Plaintiffs and Appellants.

Poole & Shaffery, John H. Shaffery, John F. Grannis and Jaion Chung for Defendant and Respondent Illinois Tool Works Inc.

Leclairryan, Peter M. Hart and Joanne Madden for Defendant and Respondent Biochem Systems.

Walsworth, Franklin, Bevins & McCall, Karen M. Sullivan and Sadaf A. Nejat for Defendant and Respondent Rust-Oleum Corporation.

Gates, O'Doherty, Gonter & Guy, Richard A. Muench and Rebecca T. Amirpour for Defendant and Respondent WD-40 Company.

Steptoe & Johnson, Lawrence P. Riff and Jennifer B. Bonneville for Defendant and Respondent CRC Industries, Inc.

Wood, Smith, Henning & Berman, Seymour B. Everett, Tracy M. Lewis and Samantha E. Kohler for Defendant and Respondent Lustre-Cal.

Wood, Smith, Henning & Berman, David F. Wood and Joshua A. Quinones for Defendant and Respondent Radiator Specialty Company.

Manion Gaynor & Manning, Melissa R. Badgett, Carrie S. Lin and Amanda R. Biggerstaff for Defendant and Respondent Southwest Lubricants, Inc., and Dixon Investments, Inc.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, George E. Nowotny III, Clayton T. Lee and Arezoo Jamshidi for Defendant and Respondent The Supply Station, Inc.

Lynberg & Watkins, Guy N. Webster and Nicole M. Charney for Defendant and Respondent Aervoe Industries, Inc.

Yukevick | Cavanaugh, James J. Yukevich, Steven D. Smelser and David A. Turner for Defendant and Respondent Safariland, LLC.

Foley & Mansfield and Joseph V. Macha for Defendant and Respondent Lawson Products, Inc.

Lewis Brisbois Bisgaard Smith, Anthony E. Sonnett and Jocelyn A. Julian for Defendant and Respondent Diversey, Inc.

Law Offices of Vergil L. Roth, Virgil L. Roth and Charles D. Ferrari for Defendant and Respondent ISI Group, Ltd.

*********

2

Plaintiffs Kathleen Ryan and Cody Ryan appeal from judgments of dismissal after the trial court sustained defendants' demurrers.[1]  Plaintiffs commenced this wrongful death lawsuit in November 2011, after Andy Ryan died in April 2009.[2]  Kathleen was Andy's wife, and Cody is the adult son of Kathleen and Andy.  Kathleen also sued as guardian ad litem on behalf of her and Andy's five minor children, though she later voluntarily dismissed the minors' causes of action.  Following several rounds of pleading, the trial court sustained defendants' demurrers on statute of limitations grounds without leave to amend.  We affirm.

## FACTS AND PROCEDURE

As always in the context of reviewing a demurrer, we consider the facts alleged in the third amended complaint (TAC) to be true.  (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  We may also consider matters the trial court judicially noticed.  (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)  Examined in the light of these rules, these are the facts in this case.

Andy worked as a California Highway Patrol (CHP) officer for approximately 23 years.  He was assigned to vehicle inspections for approximately the last 12 years of his life.  During the course of his employment as a vehicle inspector, Andy was exposed to chemical products manufactured by defendants, including solvents, paint strippers, and carburetor cleaners.  These chemical products contained significant

---

[1]     Fifteen defendants filed demurrers and/or joinders in others' demurrers:  Illinois Tool Works Inc.; Biochem Systems; Rust-Oleum Corp.; WD-40 Company; CRC Industries, Inc.; Lustre-Cal; Radiator Specialty Company; Southwest Lubricants, Inc.; Dixon Investments, Inc.; The Supply Station, Inc. (Supply Station); Aervoe Industries, Inc.; Safariland, LLC (Safariland); Lawson Products, Inc. (Lawson); Diversey, Inc.; and ISI Group, Ltd.

[2]     For the sake of clarity, we use plaintiffs' and decedent's first names when referring to them individually.  We do not intend this informality to reflect a lack of respect.

3

concentrations of toxic chemicals and carcinogens, and as a result of Andy's exposure to them, he suffered from serious illness, including large B-cell lymphoma. He was hospitalized and underwent surgery and other treatments, but he died of his illness in or about April 2009.

On June 4, 2010, Kathleen filed a complaint against Guarantee Trust Life Insurance Company for breach of contract and breach of the implied covenant of good faith and fair dealing (life insurance complaint). The gravamen of the life insurance complaint was that the defendant insurer failed to pay Kathleen's death benefit claim after Andy's death. Kathleen alleged in the life insurance complaint that Andy contracted lymphoma in or about September 2008, which was "caused by his exposure to toxic chemicals he came into contact with while performing his duties as a [CHP] Officer before 2003."

Kathleen never discussed with Andy the types of products or chemicals he used while working for the CHP. In September 2011, Kathleen and her family were preparing to move to a new home. She was cleaning out boxes in her garage when she discovered a small file that appeared to be research Andy had conducted into chemicals and defendants' products. Andy never disclosed the existence of such a file to her. Plaintiffs did not know which chemical products caused Andy's death or the manufacturers of those products until Kathleen discovered this file in September 2011. On November 10, 2011, they filed this action. The TAC alleged causes of action against defendants for negligence, strict liability, and loss of consortium.

Defendants' demurred to the original complaint on statute of limitations grounds, and in response, plaintiffs filed the first amended complaint. Defendants again filed demurrers, and the trial court sustained defendants' demurrers with leave to amend based on the statute of limitations, among other grounds. After defendants demurred to the second amended complaint (SAC), the trial court again sustained the demurrers based in part on the statute of limitations, and the court gave plaintiffs leave to amend yet again. Plaintiffs filed the TAC, and the court sustained defendants'

4

demurrers based on the statute of limitations, this time without leave to amend. Defendants filed a request for judicial notice of the life insurance complaint, which the court impliedly granted when it relied in part on the life insurance complaint in its ruling.

The court entered judgments for all defendants who had demurred, except Supply Station and Lawson. No judgments for Supply Station and Lawson appear in the record. Supply Station indicated in its respondent's brief on appeal that it submitted a proposed judgment to the trial court, but the court had yet to enter it.

Plaintiffs filed a notice of appeal in May 2013, before the court had entered many of the judgments for defendants. Plaintiffs purported to appeal from the court's March 6, 2013 minute "order sustaining demurrer[s] without leave to amend." (Capitalization omitted.)

## STANDARD OF REVIEW

We review de novo whether the TAC sets forth facts sufficient to state a cause of action. (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1085.) We also consider facts of which the trial court properly took judicial notice. (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751.) We review the trial court's decision whether to grant leave to amend for abuse of discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## DISCUSSION

### 1. *Appealabilit*

Preliminarily, Safariland invites us to dismiss the appeal as to it because the court did not enter judgment for Safariland until June 24, 2013, long after plaintiffs filed their notice of appeal. We decline Safariland's invitation. An order sustaining a demurrer is not an appealable order. (*Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 202.) Still, when plaintiffs file their notice of appeal prematurely, and the court later enters the appealable judgment, we have the discretion to construe the notice of appeal liberally and treat it as having been taken

5

from the judgment. (*Ibid.*, see also Cal. Rules of Court, rule 8.104(d)(2).) We shall exercise that discretion in this case, not just as to Safariland, but as to all other defendants for whom the notice of appeal was premature.

Supply Station also contends we should dismiss the appeal as to it because the appeal was premature. The situation with Supply Station is slightly different because we have no record of a judgment for Supply Station at all. (The same is true for Lawson, though Lawson does not expressly argue we should dismiss the appeal.) Even in a case like this, when a judgment of dismissal is absent, we have the discretion to consider the merits of the appeal. (*Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1019.) "[W]hen the trial court has sustained a demurrer to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment." (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396; see *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 528, fn. 1.)

Such was the case here. The trial court determined plaintiffs' causes of action were time-barred. The order sustaining defendants' demurrers combined with the voluntary dismissal of the minor plaintiffs' case disposed of the entire case against defendants, including Supply Station and Lawson. Other defendants have briefed the appeal on its merits, and Supply Station and Lawson have joined in those briefs. Under these circumstances, and to avoid delay and promote the interests of justice, we will decide the case as to Supply Station and Lawson on its merits. (*Zipperer v. County of Santa Clara, supra*, 133 Cal.App.4th at p. 1019; *Sisemore v. Master Financial, Inc., supra*, 151 Cal.App.4th at p. 1396.)

6

## 2. *Statute of Limitations*

We agree with the trial court that plaintiffs' causes of action were time barred. The parties do not dispute that Code of Civil Procedure sections 335.1 and 340.8[3] govern the statute of limitations analysis. Section 335.1 applied to the cause of action for loss of consortium. (2 Thomas et al., Cal. Civil Practice Torts (2013) § 10:9.) It provides a two-year statute of limitations for an action for "injury to, or for the death of, an individual caused by the wrongful act or neglect of another." (§ 335.1.) The limitations period beings to run when the injury resulting in loss of consortium occurs. (*Priola v. Paulino* (1977) 72 Cal.App.3d 380, 390-391.)

Section 340.8 applied to the causes of action for negligence and strict liability based on Andy's alleged exposure to toxic chemicals. It provides: "In an action for the wrongful death of any plaintiff's decedent, based upon exposure to a hazardous material or toxic substance, the time for commencement of an action shall be no later than either (1) two years from the date of the death of the plaintiff's decedent, or (2) two years from the first date on which the plaintiff is aware of, or reasonably should have become aware of, the physical cause of the death and sufficient facts to put a reasonable person on inquiry notice that the death was caused or contributed to by the wrongful act of another, whichever occurs later." (§ 340.8, subd. (b).)

The Legislature intended to codify California's discovery rule in section 340.8, as the rule is explained in *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 (*Jolly*), *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383 (*Norgart*), and *Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048. (Sen. Bill No. 331 (2003-2004 Reg. Sess.) § 2.) "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . A plaintiff need not be aware of the

---

[3]     Further undesignated statutory references are to the Code of Civil Procedure.

7

specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly, supra*, at pp. 1110-1111, citation & fn. omitted.) To rely on the discovery rule, plaintiffs whose complaint shows on its face that their causes of action are time-barred must specifically plead facts showing "'(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808 (*Fox*).)

"The discovery rule . . . allows accrual of the cause of action even if the plaintiff does not have reason to suspect the defendant's identity. [Citation.] The discovery rule does not delay accrual in that situation because the identity of the defendant is not an element of a cause of action." (*Fox, supra*, 35 Cal.4th at p. 807.) Plaintiffs may discover, or have reason to discover, their cause of action even if they do not suspect the identity of the defendant. (*Norgart, supra*, 21 Cal.4th at p. 399.) In *Jolly*, our Supreme Court explained plaintiffs can timely file a complaint even if they are unaware of the defendant's identity, but they know or have reason to know their injuries were caused by the wrongful act of another. They may do this by filing "a timely complaint under section 474, which allows suit to be filed against a Doe party. From the time such a complaint is filed, the plaintiff has three years to identify and serve the defendant." (*Jolly, supra*, 44 Cal.3d at p. 1118.) Thus, "[i]f plaintiffs do not have a sufficient basis to allege that a particular internalized injury-causing toxin was manufactured or supplied by a specific person or entity, their complaints must name Doe defendants [citation], availing them of [section 474]'s protection against the statute of limitations [citation] until they can identify the defendants and name them by their true names." (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 81.)

Here, the TAC shows on its face that plaintiffs' causes of action are time-barred, and plaintiffs have not pleaded facts sufficient to establish delayed discovery.

8

Andy died in April 2009. Plaintiffs did not file suit until November 2011, too late under the two-year statute of limitations. The TAC does not allege when and how plaintiffs first discovered exposure to toxic chemicals caused Andy's injuries and the inability to have made this discovery sooner, which are the relevant facts. (*Fox, supra*, 35 Cal.4th at p. 808.) Instead, the TAC alleges plaintiffs did not personally ascertain the identities of defendants or their chemical products until September 2011, when Kathleen discovered the file in the garage. But the fact that they did not know the identities of defendants or their products does not delay accrual of their causes of action. (*Fox, supra*, 35 Cal.4th at p. 807; *Norgart, supra*, 21 Cal.4th at p. 399.) The discovery rule requires them to allege when they knew exposure to toxic chemicals caused Andy's injuries, which is not necessarily the same time they discovered the names of the allegedly offending products and chemicals.

Indeed, we know the time and manner of discovery could not possibly have been as late as September 2011, when Kathleen allegedly found the file. In an earlier complaint (the SAC), plaintiffs alleged Kathleen found the file in the garage in September 2011, as they alleged in the TAC. They also alleged they were unaware Andy "had sustained wrongful death due to toxic chemicals" until September 2011, and they had not "suspected" Andy's "chemically induced wrongful death might be occupationally related and/or related to the toxic chemical exposure" until September 2011. The trial court properly took judicial notice of Kathleen's life insurance complaint and the allegations in it that Andy's lymphoma was "caused by his exposure to toxic chemicals he came into contact with while performing his duties as a [CHP] Officer." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 [in demurrer proceedings, trial and appellate courts may properly take judicial notice of a party's earlier pleadings and positions from the same case and other cases].) Given that Kathleen filed the life insurance complaint in June 2010, the court ruled the life insurance complaint contradicted the allegations of delayed discovery in the SAC, and plaintiffs could not avoid the statute of limitations by relying on demonstrably false

allegations.  (See *id.* at pp. 877-878 ["When the plaintiff pleads inconsistently *in separate actions*, the plaintiff's complaint is nothing more than a sham that seeks to avoid the effect of a demurrer.  [Citations.]  Under such circumstances, the court will disregard the falsely pleaded facts and affirm the demurrer."].)  Still, the trial court gave plaintiffs another chance to allege delayed discovery in the TAC.

In the TAC, plaintiffs have omitted the demonstrably false allegation that they did not know exposure to toxic chemicals caused Andy's injuries until September 2011.  They simply do not explain when and how they first discovered exposure to toxic chemicals at work caused his death.  As such, they have failed to plead facts sufficient to invoke the discovery rule.  The court did not err in sustaining defendants' demurrers on statute of limitations grounds.

Moreover, the court did not abuse its discretion in denying leave to amend.  Plaintiffs were well aware of the statute of limitations issue and had several opportunities to amend their allegations.  On appeal, plaintiffs argue the trial court erred in sustaining the demurrer, but they do not identify new or different facts they could allege to state timely causes of action, assuming the court did not err.  Thus, they fail to show the court erred in denying leave to amend.  (*Cantu v. Resolution Trust Corp., supra*, 4 Cal.App.4th at p. 890.)

## DISPOSITION

The judgments are affirmed.  Defendants shall recover costs on appeal.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.                    RUBIN, J.

10